UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANGEL ROBLES-LAZCANO,<br><br>Defendant. | ) | 2:26-CR-00039-DCLC-CRW |

**MEMORANDUM OPINION AND ORDER**

Defendant Angel Robles-Lazcano moves to dismiss the indictment charging him with being found in the United States after having been previously removed, in violation of 8 U.S.C. § 1326. [Docs. 24, 27]. He raises three arguments in support of dismissal: (1) the five-year statute of limitations has expired; (2) venue is improper in this district; and (3) the indictment fails to state an offense or is otherwise defective. Alternatively, he moves to transfer venue to the Western District of Tennessee. The Government has responded in opposition [Docs. 33, 34] and has moved to amend the indictment. [Doc. 29]. Because federal immigration authorities found Defendant in this district in November 2025, the indictment is timely and venue is proper here. And because a reference to an inapplicable penalty provision neither defeats the indictment nor permits amendment without the grand jury, the Court denies the remaining motions.

## I. BACKGROUND

Defendant is a Mexican citizen who was removed from the United States in 2008, 2010, and twice in 2012. On October 21, 2017, he was arrested and charged with four criminal offenses in Dyer County, Tennessee. He pleaded guilty to one of those offenses—aggravated sexual

battery—and on July 31, 2019, was sentenced to 10 years' imprisonment. In November 2025, while he was serving his sentence at the Tennessee Department of Correction's Northeastern Correctional Complex in Mountain City, Tennessee, federal officials learned that Defendant was in the United States without authorization and lodged an immigration detainer. On April 15, 2026, the Government filed a one-count complaint charging Defendant with being "found in the United States after having been removed therefrom[.]" That complaint was replaced with an indictment filed May 12, 2026, charging one count of illegal reentry under 8 U.S.C. § 1326 and citing the enhanced penalty provision in § 1326(b)(2).[1] These motions followed.

## II. ANALYSIS

### A. Motion to Amend Indictment

A court may amend an indictment without submitting it to the grand jury only "when 'the change is merely a matter of form.'" *United States v. Rosenbaum*, 628 F. App'x 923, 929 (6th Cir. 2015) (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)). Matters of form include corrections of clerical or typographical errors. *Id.* The Sixth Circuit has "never extended the 'matter of form' exception beyond the traditional categories of 'corrections of clerical or typographical errors … which do not alter the charging terms of the indictment.'" *United States v. Johnson*, No. 25-3691, 2026 WL 3216632, at *18 (6th Cir. Oct. 27, 2026) (vacating the defendant's conviction as to Count 2 of the indictment after the district court granted the Government's motion to amend to change the drug type charged from cocaine base to powder

[1] The maximum sentence for a violation of § 1326(a) is two years. However, a defendant who is convicted under § 1326(a) is subject to an enhanced sentence if any subsection of § 1326(b) applies. In this case, the indictment cites § 1326(b)(2), and this subsection increases the maximum sentence for a violation of § 1326(a) to twenty years if the defendant's "removal was subsequent to a conviction for commission of an aggravated felony." Here, Defendant's removals from the United States occurred before his conviction for aggravated sexual battery.

cocaine—a change that eliminated a potential ten-year mandatory minimum).

The Government moves to amend the indictment to remove the enhanced penalty provision under 8 U.S.C. § 1326(b)(2). Defendant agrees that subsection (b)(2) should be removed from the indictment but asks the Court to dismiss the indictment for failure to state an offense or as otherwise defective rather than grant the Government's motion to amend.

The Government's inclusion of this provision is neither a clerical nor a typographical error, so removing it would be more than "a matter of form." *See Rosenbaum*, 628 F. App'x at 929. Subsection (b)(2) is not a separate crime; it is a penalty provision cited to give Defendant notice of the Government's intention to seek a greater sentence. *See Almendarez-Torres v. United States*, 523 U.S. 224, 226 (1998) (finding that subsection (b)(2) of 8 U.S.C. § 1326 "is a penalty provision…it does not define a separate crime."). The Government may no longer seek to apply the enhanced penalty, but that is not a valid reason for the Court to amend the indictment. *Cf. Johnson*, 2026 WL 3216632, at *18 ("Following the government's path, which would allow it to redraft any term in an indictment that does not go to an essential element of the charged offense, would amount to a sea change in our circuit's understanding of the Presentment Clause."). He is not required to admit that he qualifies for the enhancement should he choose to plead guilty to the offense charged in Count One, and a jury would not be presented with evidence or argument concerning the possible sentence he could receive.[2] Accordingly, the Government's Motion to Amend Indictment is **DENIED**.

## B. Motions to Dismiss Indictment

In Defendant's first Motion to Dismiss the Indictment [Doc. 24], he argues that the statute

[2] If Defendant objects to submitting the indictment in its current form to a jury, he may raise the issue at trial, and the Court will address it then.

of limitations has run for his charged offense and that venue is improper in this district. In his second motion [Doc. 27], he argues that the indictment fails to state an offense or is otherwise defective or objectionable. The Court will address each argument in turn.

**1. Statute of Limitations**

Defendant is charged with being found illegally in the United States. The elements of that offense are: "(1) the defendant is a[ ] [noncitizen]; (2) the defendant has been arrested and deported from the United States; and (3) thereafter, the defendant was found in the United States without the Attorney General's express consent to reapply for admission." *United States v. Solis-Roblero*, No. 25-5532, 2026 WL 2594501, at *2 (6th Cir. Sept. 2, 2026) (quoting *United States v. Villafana-Vivero*, 81 F. App'x 573, 578 (6th Cir. 2003)). The third element—being found in the United States—is complete when federal immigration authorities discover and identify the defendant as unlawfully present in the country after a prior removal. *Id.* This requires no conduct by the defendant himself as "federal immigration authorities are the ones who do the discovery and identification." *Id.* (citing *United States v. Ayon-Brito*, 981 F.3d 265, 270 (4th Cir. 2020)).

As a result, this offense is a continuing offense beginning at the moment the defendant is first physically present in the United States and completing when federal immigration authorities identify and discover him. *Id.*; *cf. United States v. Murillo-Monzon*, 240 F. App'x 43, 49 (6th Cir. 2007) ("The crime is *being* in the United States and is not limited to the instant at which a federal agent lays hands on the person and a light bulb in the agent's head illuminates the mental sign 'This guy's an illegal alien.'" (quoting *United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 460 (7th Cir. 2006))). This offense is subject to the general five-year statute of limitations for non-capital offenses set out in 18 U.S.C. § 3282(a), which begins to run when the defendant is "found in" the United States. *United States v. Garcia-Moreno*, 626 F. Supp. 2d 826, 834 (W.D. Tenn.

2009) (when "an alien is found for the purposes of § 1326, meaning that federal agents become aware he is illegally in the country, the offense is complete and the limitations period begins to run.") (quotations and citation omitted); *see also United States v. Palomino Garcia*, 606 F.3d 1317, 1323 (11th Cir. 2010). "This occurs when immigration authorities either know of or, with the exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the defendant's presence." *Id.* (cleaned up) (quoting *United States v. Scott*, 447 F.3d 1365, 1369 (11th Cir. 2006)).

Here, federal immigration authorities "found" Defendant in November 2025 when they learned of his presence in the United States. The statute of limitations began running at that time.[3] Defendant does not argue that federal immigration officials knew, or through the exercise of due diligence could have discovered, his unlawful presence before November 2025. Instead, he argues that the statute of limitations began running at the time of his last volitional act of being in the United States, which he claims was at the latest July 2019 [Doc. 24, pg. 5]. He argues that the five-year statute of limitations expired no later than July 2024. [*Id.*]. But while "the act of returning to the United States must be voluntary, it is not relevant whether an alien's continued presence in the United States was voluntary at the moment of discovery." *United States v. Dixon*, 327 F.3d 257, 259 (3d Cir. 2003); *see, e.g., United States v. Salazar-Robles*, 207 F.3d 648, 650 (9th Cir. 2000) ("discovery d[oes] not have to be voluntary"); *United States v. Herrera-Ordones*, 190 F.3d 504, 511 (7th Cir. 1999). A defendant can "be 'found in' the United States for the

---

[3] The Government argues that the statute of limitations did not begin to run until federal officials confirmed Defendant's unlawful status on April 14, 2026, but federal officials learned that Defendant "was in the United States without authorization" as early as November 2025 when they placed an immigration detainer on him [Doc. 33, pg. 2]. Therefore, he was identified and discovered in November 2025, and the statute of limitations began running at that time. *See Solis-Roblero*, 2026 WL 2594501, at *2.

purposes of § 1326 while involuntarily incarcerated." *Dixon*, 327 F.3d at 260. Defendant's only relevant voluntary conduct was his reentry to the United States. But the limitations period runs not from the date he reentered, but from the date federal immigration authorities found him, and that date is undisputed.

Because federal authorities discovered his presence in the United States in November 2025, the statute of limitations had not expired when Defendant was indicted in May 2026. Therefore, Defendant's motion to dismiss as outside the statute of limitations is **DENIED**.

**2. Improper Venue**

Section 1329 of Title 8 governs venue for prosecutions brought under § 1326. It provides that venue is proper "at any place in the United States at which the violation may occur or at which the person charged with a violation … may be apprehended." 8 U.S.C. § 1329; *see Herrera-Ordones*, 190 F.3d at 511 ("Venue is proper anywhere in the United States, wherever the previously deported and reentered alien is 'found.'"). The Government must establish, by a preponderance of the evidence, that venue is proper by showing that the offense occurred in this district or that Defendant was apprehended here.

Defendant was found in the United States by federal immigration officials when he was in the Eastern District of Tennessee while detained at the Northeastern Correctional Complex in Mountain City, Tennessee. [*See* Doc. 3 at ¶¶ 8-9]. The indictment alleges that on April 14, 2026, in the Eastern District of Tennessee, Defendant was found in the United States. Defendant does not dispute that he was found in this District. Venue, therefore, is proper here.

Defendant argues that for a § 1326 "found in" offense, venue is proper where the defendant committed the volitional act of being present in the United States, and, since Defendant was only volitionally present in the Western District of Tennessee, venue is only proper in that district. But,

as described above, one element of a § 1326 offense is being found in the United States by federal officials, and this element does not require the defendant's volitional presence. *Solis-Roblero*, 2026 WL 2594501, at *3-4; *Salazar-Robles*, 207 F.3d at 650 (explaining that a defendant may "be prosecuted in the district the offense is completed by his discovery, be he there willy-nilly."). Therefore, "whether an alien was in a particular location by choice has no relevance in venue determinations." *Herrera-Ordones*, 190 F.3d at 511. Though Defendant was not present in this district volitionally when he was "found in" the United States, that fact does not affect venue. Accordingly, Defendant's motion to dismiss for improper venue is **DENIED**.

**3. Defective or Objectionable Indictment**

Defendant also argues that the indictment fails to state an offense or is otherwise defective or objectionable. Specifically, he objects to the inclusion of the enhanced penalty provision under § 1326(b)(2) and argues that it does not apply to him. The Government agrees that the indictment should not have included subsection (b)(2).

The Court need not decide at this point whether the penalty enhancement applies to Defendant. But if it does not apply to Defendant, that does not render the indictment defective. An indictment is "sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *United States v. Rankin*, 929 F.3d 399, 404-05 (6th Cir. 2019) (quoting *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005)). The Supreme Court has held that subsection (b)(2) is not a separate crime and as such need not be charged in the indictment. *Almendarez-Torres*, 523 U.S. at 226-27; *but see United States v. Starling*, 184 F.4th 795, 807 (6th Cir. 2026) (noting that the Government conceded error for its failure to include ACCA allegations for sentencing enhancement purposes in the indictment but that it did not "seriously affect the fairness, integrity or public reputation of

the judicial proceedings"). Due process cannot require that an indictment be dismissed for providing notice of a sentencing enhancement that does not apply or that the Government no longer intends to apply (or both). Defendant does not cite to any authority stating otherwise.

Defendant can object to the enhancement at sentencing, or he can move under Federal Rule of Criminal Procedure 7(d) to strike the reference to subsection (b)(2) as surplusage. *See Johnson*, 2026 WL 3216632, at *18 ("A court, after all, does not err in ignoring irrelevancies in or striking surplusage from an indictment." (cleaned up) (quoting *United States v. Grenoble*, 413 F.3d 569, 577 & n.6 (6th Cir. 2005))). Accordingly, Defendant's motion to dismiss for failure to state an offense or as otherwise defective or objectionable is **DENIED**.

### C. Motion to Transfer Venue

In the alternative to his motions to dismiss the indictment, Defendant argues that this case should be transferred to the Western District of Tennessee because it is the better venue for trial and sentencing. Fed. R. Crim. P. 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b); *see United States v. Jamal*, 246 F. App'x 351, 369 (6th Cir. 2007) ("The criminal rules require that a transfer for convenience satisfy the convenience of *both* parties.").(emphasis in original). The Supreme Court has identified ten factors to be considered in making such a determination: (1) the location of Defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption to Defendant's business if the case is not transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket conditions of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt v. Minnesota Mining & Mfg. Co.*, 376 U.S. 240, 243–44 (1964); *United States v. Micciche*, 165 F. App'x 379, 385 (6th Cir. 2006). The defendant bears the burden to show that a transfer would serve the purposes set forth in Rule 21(b). *United States v. Tripp*, No. 91-5129, 946 F.2d 896 (Table), 1991 WL 203756, at *5 (6th Cir. Oct. 7, 1991). Ultimately, the decision to transfer rests within the discretion of the trial judge. *United States v. Collins*, No. 91-5215, 955 F.2d 45 (Table), 1992 WL 31302, at *4 (6th Cir. Feb. 20, 1992) (citing *Platt*, 376 U.S. at 245).

Here, the first, second, third, fourth and seventh factors all support keeping the case in this district. Defendant is currently detained in the Carter County jail, within this district. All witnesses for the Government are located in this district [Doc. 33, pg. 5]. The location of events likely to be at issue implicates only locations in this district. While it is undisputed that Defendant was initially arrested in Dyer County, in the Western District of Tennessee, and that all his prior convictions were in that district, Defendant was incarcerated in the Eastern District of Tennessee when federal officials discovered his presence in the United States. Relevant documents and records in this case are also located in this district. Defendant's current counsel is located in this district, and if venue were transferred he would have to be appointed new counsel in the Western District of Tennessee.

The fifth, sixth, eighth, and ninth factors are neutral. There is no disruption to Defendant's business whether or not the case is transferred because he has been incarcerated in this district for some time. There would be minimal change in expenses to the parties to transfer compared to remaining in this district. The district court in Greeneville is as accessible to Defendant, the parties, and any witnesses as the district court in Jackson, Tennessee. And docket conditions do not impact whether this case could be timely litigated in this District.

The tenth factor—whether any special factors might affect transfer—does support transfer. Defendant's family is located in the Western District of Tennessee, and transfer would make attending hearings or trial significantly easier for them.

The most significant factors in this case—the location of Defendant, witnesses, and relevant records—all weigh against transfer. And Defendant has not carried his burden to show that the Western District would be a more convenient forum or that transfer would serve the interests of justice. Accordingly, Defendant's motion to transfer venue is **DENIED**.

## III. CONCLUSION

For these reasons, the Government's Motion to Amend Indictment [Doc. 29], and Defendant's Motions to Dismiss Indictment [Docs. 24, 27] are **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge